UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Yasmine A. Akl, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 2:26-cv-0101 |
| | : | |
| Delaware Court of Common Pleas, et Al. | : | |
| Defendants. | : | |

**<u>PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT</u>**

## Table of Contents

I.  Introduction.................................................................................. 1

II.  Statement of the Case.................................................................. 2

III.  Legal Standard............................................................................. 4

IV.  Argument..................................................................................... 4

    A.  Plaintiff's Complaint should not be dismissed under
        Rule 12(b)(1) or 12(b)(6)............................................... 4

    B.  Claims against the Delaware County Court of Common Pleas... 5

    C.  Judicial immunity does not mandate dismissal because
        Plaintiff plausibly alleges non-judicial/investigative conduct
        and actions taken in a clear absence of jurisdiction.................... 6

    D.  Rooker-Feldman does not apply because Plaintiff is not
        seeking appellate review of a final state judgment and alleges
        independent injuries not caused by a state-court judgment......... 12

    E.  The Anti-Injunction Act does not require dismissal, and
        § 1983 falls within the "expressly authorized" exception........... 13

    F.  Younger abstention does not require dismissal of this action,
        and at most would justify limited, tailored treatment of
        certain prospective relief.............................................. 13

    G.  The statute of limitations does not warrant dismissal at the
        pleading stage because Plaintiff alleges post-limitations-period
        acts and continuing injury.............................................. 14

    H.  Declaratory relief is not categorically barred where Plaintiff
        alleges ongoing legal effects and continuing controversy.......... 14

I.     Dismissal with prejudice is improper; amendment is not futile............................................................................... 15

V.   Conclusion...................................................................... 15

## Table of Authorities

**Page(s)**

**Cases**

Calabro v. Leiner, 464 F. Supp. 2d 470 (E.D. Pa. 2006)....................... 3, 7

County of Sacramento v. Lewis, 523 U.S. 833 (1998)........................ 11

Deer Park Lumber, Inc. v. Major, 559 A.2d 941 (Pa. Super. 1989)...... 3, 7

Dietrich v. Dietrich, 923 A.2d 461 (Pa. Super. 2007)........................... 9

Ernst v. Children & Youth Servs. of Chester Cnty.,
108 F.3d 486 (3d Cir. 1997)................................................................. 6, 12

Ferraro v. Patterson-Erie Corp. (Pa. 2024)
(as cited in brief; full reporter citation to be inserted).......................... 3, 7

Forrester v. White, 484 U.S. 219 (1988)................................................ 8

Fuentes v. Shevin, 407 U.S. 67 (1972).................................................. 11

Gibson v. Goldston, 68 F.4th 212 (4th Cir. 2023)................................ 9

McGreal v. Westmoreland County, No. 20-0157
(W.D. Pa. Jan. 28, 2020)..................................................................... 5, 12

Mireles v. Waco, 502 U.S. 9 (1991)...................................................... 8

Mitchum v. Foster, 407 U.S. 225 (1972)............................................... 13

Robinson v. Robinson, 338 Pa. 416, 12 A.2d 5 (1940)........................ 3, 7

Stump v. Sparkman, 435 U.S. 349 (1978).............................................. 10

**Statutes and Constitutional Provisions**

42 U.S.C. § 1983................................................................... 4, 5, 6, 12, 13

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................ 1, 4

Fed. R. Civ. P. 12(b)(6) ............................................................ 1, 4

Pa.R.C.P. 401(a)....................................................................... 4, 7

Pa.R.C.P. 430........................................................................... 2, 7

Pa.R.C.P. 1915.4(b).................................................................. 9

Pa.R.C.P. 234.4(b).................................................................... 7

Pa.R.C.P. 4012......................................................................... 7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

Yasmine A. Akl,                                    :
                    Plaintiff,                     :
                                                   :
          v.                                       :          No. 2:26-cv-0101
                                                   :
Delaware Court of Common Pleas, et Al.   :
                    Defendants.                    :

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

## I. INTRODUCTION

This case is not about dissatisfaction with a custody ruling. It is about the transformation of a void civil docket into an investigative instrument used against a non-party grandmother. The Pennsylvania Superior Court declared that the underlying case lacked a justiciable controversy and that orders entered therein had no legal force or effect. Yet Defendants continued to leverage that docket to compel discovery, impose sanctions, coordinate with law enforcement, and generate international investigative flags.

Absolute judicial immunity does not protect investigative coordination, enforcement activity, or action taken in the clear absence of jurisdiction. At the pleading stage, Plaintiff's detailed allegations—supported by transcripts, docket entries, and judicial admissions—plausibly state constitutional violations requiring factual development.

Defendants seek dismissal under Rules 12(b)(1) and 12(b)(6) by characterizing this case as an impermissible attempt to relitigate or appeal state custody rulings. That is not what Plaintiff has pleaded. Plaintiff is a non-party grandmother who alleges that Defendants used a custody docket as an investigative and coercive tool against her, including compelled discovery and deposition efforts against a non-party, law-enforcement escalation directed at her home and workplace, and an extraordinary and prolonged denial of any hearing on

1

her Motion to Intervene based on an unconstitutional condition. The Complaint alleges independent constitutional injuries to Plaintiff—not a mere disagreement with custody outcomes—and seeks relief for ongoing violations.

At the pleading stage, the Court must accept Plaintiff's allegations as true and draw reasonable inferences in her favor. Under that standard, Defendants' broad immunity and abstention arguments do not warrant dismissal with prejudice.

## II. STATEMENT OF THE CASE

Plaintiff incorporates the Complaint's allegations. In summary, Plaintiff alleges that Defendants: (a) authorized and relied on "alternative service" directed to Plaintiff's home rather than the mother's residence without compliance with service requirements; (b) issued and enforced custody-related directives despite acknowledged service defects; (c) permitted and compelled discovery and deposition efforts targeting Plaintiff, a non-party; (d) triggered and facilitated coercive law-enforcement encounters directed at Plaintiff; and (e) denied Plaintiff a hearing on her Motion to Intervene for more than a year by conditioning any hearing on a future custody outcome beyond Plaintiff's control, thereby depriving Plaintiff of due process and access to courts and interfering with familial association.

Plaintiff further alleges that the state court's asserted authority over the custody docket was never validly invoked because service of original process—the jurisdictional gateway through which the state's coercive power is validly triggered—was not accomplished in a manner compliant with Pennsylvania law. Pennsylvania service rules must be strictly followed; absent valid service, a court lacks personal jurisdiction and is powerless to enter binding orders against the person to be served or to use the litigation as a coercive enforcement locus.

Specifically, Plaintiff challenges purported alternative service rulings. Pa.R.C.P. 430, a fundamental part of granting alternative service, was ignored by Judge Atinuke B. Moss. Instead of requiring Pa.R.C.P. 430 to be followed Judge Moss cited justifications of alternative service based upon "equity" and "justice". Rule 430(a) requires a motion supported by an affidavit stating the nature and extent of the investigation undertaken to locate the defendant and a fact-specific

2

showing justifying the proposed method.

Plaintiff alleges that the July 26, 2023 ex parte order issued without a Rule-compliant affidavit and without a particularized showing tying Mother to Plaintiff's residence, effectively creating a legal fiction that Mother "resided" at Plaintiff's home for purposes of posting and enforcement.

Plaintiff also alleges that the diligence supporting alternative service was legally insufficient. Under Deer Park Lumber, Inc. v. Major, 559 A.2d 941 (Pa. Super. 1989), diligence requires more than a mere paper search. This is the holding of Under Deer Park Lumber, Inc: (1) affidavit supporting order permitting substituted service by publication was deficient on its face where it did not outline measures taken by plaintiff to attempt to locate potential defendants; (2) underlying investigation, which consisted of mere paper search in county in which property was located, and did not extend to adjoining county in which last record property owners had resided, was insufficient to support substituted service of process; (3) in order to effect service by publication, party must first file motion, accompanied by affidavit conforming to requirements of rule; and (4) refusal to reopen default judgment was error, where trial court had not obtained requisite personal jurisdiction needed for entry of judgment in light of insufficient service of process.

There was a complete mockery of the Commonwealth of Pennsylvania's rules for alternative service in the case at bar. Service of the custody complaint was the fundamental requirement for the Delaware County Court of Common Pleas to exercise jurisdiction in this case.

Likewise, in Calabro v. Leiner, 464 F. Supp. 2d 470 (E.D. Pa. 2006), alternative service must be practically tailored to reach the defendant; posting process at a third-party home when the defendant is in a foreign country is not reasonably calculated to provide notice. And under Robinson v. Robinson, 338 Pa. 416, 12 A.2d 5 (1940), "residence" is a physical fact—not something manufactured by judicial fiat to create an enforcement locus at a non-party's home.

Finally, Plaintiff alleges that Defendants cannot cure these defects by pointing to actual notice. The Pennsylvania Supreme Court held in Ferraro v. Patterson-Erie Corp. (2024) that where the plaintiff fails to meet the evidentiary

3

burden of diligence required for alternative service, the defendant's actual notice is irrelevant. Plaintiff alleges that, despite counsel admitting they "did not know where Mother was," Defendants nonetheless fabricated a "residence" at 4 Eavenson Way to instrumentalize Plaintiff's home and person as the target of coercive process.

Relatedly, Plaintiff alleges that the complaint was not timely served and was not reinstated as required by Pa.R.C.P. 401(a) to remain effective as process. Under Rule 401(a), original process must be served within 30 days; if service is not made, the complaint must be reinstated by the prothonotary to be effective as process. Plaintiff alleges that enforcement, discovery, and deposition orders—directed at a non-party—were issued after the Rule 401(a) window based on process that was no longer effective, rendering subsequent orders legal nullities and reinforcing that Defendants acted without jurisdictional prerequisites while using the docket as a coercive tool.

## III. LEGAL STANDARD

Under Rule 12(b)(6), a complaint survives if it contains sufficient factual matter, accepted as true, to state a plausible claim. Under a facial Rule 12(b)(1) challenge, the Court likewise accepts the complaint's allegations as true.

## IV. ARGUMENT

### A. Plaintiff's Complaint should not be dismissed under Rule 12(b)(1) or 12(b)(6).

Taking Plaintiff's allegations as true, the Complaint plausibly alleges that Defendants—acting under color of state law—used judicial process not as neutral adjudication, but as a mechanism for investigation, coercion, and punishment of a non-party, while depriving Plaintiff of a meaningful opportunity to be heard. Those allegations state plausible claims under § 1983 for denial of procedural due process, denial of access to courts, and interference with familial association/substantive due process, and they require factual development. Dismissal at the threshold would improperly resolve contested issues of fact, motive, function, and the nature of the challenged conduct.

4

These claims turn on more than disagreement with custody outcomes. Plaintiff alleges that Defendants invoked and maintained coercive state power without a valid jurisdictional gateway—through legally deficient alternative service and ineffective original process—and then used the resulting docket as a mechanism to compel discovery, impose sanctions, and escalate law enforcement attention against a non-party. That alleged combination of jurisdictional defect coercive process plausibly states constitutional injury and requires factual development rather than dismissal at the pleading stage.

## B. Claims against the Delaware County Court of Common Pleas.

To the extent the Court concludes that the Delaware County Court of Common Pleas is immune from damages and/or not a "person" under § 1983, that issue supports—at most—dismissal of claims against that defendant, not dismissal of the entire action. Plaintiff's individual-capacity claims against Judge Moss and Master Hurchalla are independently pleaded and are not eliminated by sovereign immunity defenses asserted for the court entity.

Further, Plaintiff seeks prospective relief to halt ongoing constitutional violations. If the Court determines that prospective relief must be directed only through proper defendants, Plaintiff should be permitted leave to amend to conform the requested relief to the Court's ruling rather than dismissing with prejudice.

Defendants' "personhood" rationale for dismissal misstates § 1983. Counties and other local governments are "persons" under § 1983 when Monell's policy/custom requirements are met. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690–91 (1978) (municipalities are § 1983 "persons"; liability attaches for policies or customs that are the moving force of a constitutional injury). Federal courts in this Circuit have permitted grandparents' § 1983 claims to proceed against a county arising from exclusion from dependency/custody processes: in McGreal v. Westmoreland County, the Western District of Pennsylvania denied the county's Rule 12 motion and allowed § 1983 due process claims by grandparents against Westmoreland County and a county official to go forward. See McGreal v. Westmoreland Cnty., No. 2:18 cv 1601 NR (W.D. Pa. Jan. 28, 2020).

5

Its posture underscores that a county is a proper § 1983 defendant in this context, consistent with Monell, and that exclusionary conduct directed at grandparents may state a claim. Third Circuit precedent likewise recognizes personal liability for state actors who participate in, direct, or knowingly acquiesce in constitutional violations in child welfare contexts. See Ernst v. Children & Youth Servs. of Chester Cnty., 108 F.3d 486, 495–98 (3d Cir. 1997)

Accordingly, Defendants' "personhood" argument does not justify dismissal of Plaintiff's claims; at most, it would narrow the entity caption while leaving intact Plaintiff's individual capacity claims and any Monell compliant claims against an appropriate local governmental defendant, subject to amendment if the Court deems substitution or clarification prudent.

## C. Judicial immunity does not mandate dismissal because Plaintiff plausibly alleges non-judicial/investigative conduct and actions taken in a clear absence of jurisdiction.

Defendants contend that all challenged conduct is immune because it occurred in connection with a custody docket. That is overbroad. Judicial and quasi-judicial immunity protect judicial acts—not all conduct performed by judicial officers regardless of function—and they do not bar suit where a plaintiff plausibly alleges conduct that is administrative, investigative, or coercive in function and/or undertaken in the clear absence of jurisdiction.

Here, Plaintiff does not plead simply that Defendants issued orders she dislikes. Plaintiff pleads that Defendants converted a domestic relations docket into an investigative and coercive vehicle against a non-party, including compelled discovery and deposition efforts directed at Plaintiff, sanctions used as leverage, and law-enforcement escalation directed toward Plaintiff's home and workplace. Plaintiff further pleads that Master Hurchalla acknowledged lack of service but entered an order to get people's attention, and that Judge Moss conditioned access to a hearing on Plaintiff's Motion to Intervene on a speculative future custody outcome—effectively denying access to court.

Crucially, Plaintiff also pleads that Defendants proceeded without jurisdictional prerequisites and in a manner inconsistent with Pennsylvania's strict service regime. Service of process is the jurisdictional gateway through which the

6

state's coercive power is validly invoked. Pennsylvania courts require strict compliance because without valid service a court lacks personal jurisdiction and cannot wield coercive process. Plaintiff alleges that alternative service under Pa.R.C.P. 430—a last-resort mechanism—was authorized ex parte without a Rule-compliant affidavit detailing the nature and extent of the investigation and without a fact-specific showing tying Mother to Plaintiff's home. Plaintiff further alleges that the required diligence was absent: Deer Park Lumber, Inc. v. Major, 559 A.2d 941 (Pa. Super. 1989) requires more than a mere paper search; Calabro v. Leiner, 464 F. Supp. 2d 470 (E.D. Pa. 2006) requires a method practically tailored to reach the defendant; and Robinson v. Robinson, 338 Pa. 416, 12 A.2d 5 (1940) recognizes that "residence" is a physical fact not subject to manufacture by judicial fiat. And per Ferraro v. Patterson-Erie Corp. (2024), where the evidentiary burden for alternative service is not met, actual notice is irrelevant. Taking the Complaint as true, Plaintiff plausibly alleges that Defendants knowingly created a legal fiction—placing Mother's "residence" at a non-party's address despite admissions that Mother's location was unknown—to instrumentalize Plaintiff as an enforcement locus and investigative target.

Plaintiff further alleges that Defendants' coercive actions continued even after original process ceased to be effective under Pa.R.C.P. 401(a). Under Rule 401(a), original process must be served within 30 days, and if not served the complaint must be reinstated to remain effective as process. Plaintiff alleges that enforcement, discovery, and deposition orders were nonetheless issued against a non-party grandmother based on a complaint that had not been timely served or properly reinstated, rendering subsequent orders nullities and supporting the pleaded inference that Defendants acted in the clear absence of jurisdiction while using the docket to coerce compliance.

In addition, Plaintiff pleads a constructive denial of due process and access to court in connection with discovery directed at a non-party. Pennsylvania rules expressly recognize that non-parties may object to subpoenas and deposition demands. Pa.R.C.P. 234.4(b) allows motions to quash by "the person served or any other person with sufficient interest" to prevent "unreasonable annoyance, embarrassment, oppression, burden or expense." Pa.R.C.P. 4012 permits "the person from whom discovery or deposition is sought" to seek protective relief for good cause, including prohibiting discovery or limiting its scope. Plaintiff alleges that at the July 17, 2024 hearing the court repeatedly treated Plaintiff as having

"no capacity" to object to alternate service, subpoenas, and depositions because she had not intervened—despite the rules' explicit non-party protections—and then used the docket to compel compliance and impose punitive sanctions. Plaintiff further alleges that the hearing environment reflected investigative intimidation rather than neutral adjudication, including references on the record to the attention of criminal investigative authorities and the presence of hostile figures including Plaintiff Yasmine Akl's ex-husband Fred Akl and law-enforcement references used to pressure a non-party.

Plaintiff also pleads that her chosen advocate, Charles Sunwabe, Esquire, was removed at that critical juncture through a conflict ruling that functioned not as neutral ethics enforcement but as a tactical deprivation of counsel, leaving a non-party unrepresented while investigative demands escalated. Plaintiff alleges that disqualification—a drastic measure that destroys the attorney-client relationship—was used to strip representation immediately as the court expanded coercive discovery and financial subpoenas directed at Plaintiff.

At minimum, these allegations raise a plausible inference that Defendants acted outside a neutral adjudicative role and engaged in administrative/investigative/coercive conduct, and that they did so while proceeding without jurisdictional prerequisites. Whether particular acts were "judicial" is a fact-intensive inquiry that cannot be resolved at the Rule 12 stage where Plaintiff plausibly alleges an investigative use of process, constructive denial of access to court, and coercive conduct against a non-party in the absence of valid service and effective original process.

The doctrine of absolute judicial immunity, while essential to preserving judicial independence, is not a limitless license for state actors to transcend the boundaries of adjudication. Defendants rely heavily on Mireles v. Waco, yet Mireles—along with Forrester v. White, 484 U.S. 219 (1988)—establishes a functional test: immunity attaches to the function performed, not the title held.

When a judge departs from the adjudicative role and engages in investigative coordination, law-enforcement facilitation, or executive action, the protection of the robe evaporates.

Plaintiff plausibly alleges that Judge Moss explicitly merged a civil custody

8

docket with criminal investigation, stating on the record that the civil and criminal matters were "one and the same" and that the criminal case was "stemming from the custody case." That declaration is not a judicial ruling—it is an executive alignment.

The Complaint further alleges:

• Coordination with the District Attorney's Office
• Explicit references to FBI involvement
• Invocation of international law-enforcement mechanisms
• Use of deposition and financial subpoenas to "prove innocence"

These are hallmarks of investigative activity, not neutral adjudication.

As recognized in Gibson v. Goldston, 68 F.4th 212 (4th Cir. 2023), when a judge leaves the bench to direct or participate in investigative functions, immunity does not attach. Plaintiff plausibly alleges that Defendants used a void civil docket to trigger FBI, INTERPOL, Hague, and RCMP involvement. When judicial machinery is used as an investigative arm of law enforcement, the act loses its judicial character.

Under Pa.R.C.P. 1915.4(b), custody trials must be scheduled within 180 days. The complaint in the underlying action was filed in February 2023. No trial occurred within 180 days. Master Hurchalla admitted on August 11, 2023 that Mother had not been served—yet issued an order to get people's attention.

Under Dietrich v. Dietrich, 923 A.2d 461 (Pa. Super. 2007), custody cases not brought to trial within the prescribed timeframe are subject to dismissal.

By January 2026, nearly three years after filing, Judge Moss herself questioned how a best-interest hearing could proceed "absent the children and the Defendant." The Superior Court had already ruled that there was "no case or controversy" and that no order could have "legal force or effect."

A court that cannot enter a legally operative order is acting in a jurisdictional vacuum.

Continuing to leverage that void docket for discovery, sanctions, and investigative escalation constitutes action in the clear absence of jurisdiction—not mere procedural error.

Plaintiff alleges that void civil orders triggered cascading federal and international law-enforcement consequences, including:

• FBI courtroom presence and subsequent workplace/home visits
• Hague Convention invocation
• INTERPOL travel database flags
• RCMP coordination in Canada
• CBP/Global Entry repercussions

These are executive enforcement consequences. They are not typical attributes of a domestic relations court adjudicating custody.

When a judge's actions result in international criminal investigative flags against a non-party—based on a docket lacking jurisdiction—the conduct plausibly crosses the line from adjudication to enforcement.

Absolute judicial immunity does not shield executive-type investigative activity.

Judicial immunity does not apply where there is a clear absence of all jurisdiction. Stump v. Sparkman does not hold that any act labeled "custody" confers jurisdiction. Jurisdiction requires a live case or controversy and valid service.

The Pennsylvania Superior Court expressly held that there was no justiciable controversy and that the trial court could not enter an order with legal force or effect.

A court that continues to issue and enforce orders after being informed it lacks authority is not acting merely "in excess" of jurisdiction—it is acting without jurisdiction.

Under longstanding voidness principles, acts taken without jurisdiction are

10

nullities.

Substantive due process prohibits executive action that "shocks the conscience." County of Sacramento v. Lewis, 523 U.S. 833 (1998).

Plaintiff alleges:

• Fabrication of residence
• Use of void process
• Leveraging of law enforcement
• Removal of chosen counsel
• Punitive sanctions imposed against a non-party
• International investigative escalation

Taken together, these allegations plausibly describe deliberate and arbitrary use of state power that exceeds mere procedural irregularity.

Under Fuentes v. Shevin, 407 U.S. 67 (1972), the state may not seize property or compel compliance without notice and an opportunity to be heard. Plaintiff plausibly alleges sustained coercive use of process without those safeguards.

The sanctions imposed in January and February 2026—exceeding $5,600—are alleged to be punitive rather than coercive. Under Pennsylvania law, civil contempt must be remedial and coercive. A sanction that is determinate, retrospective, and lacks meaningful purge conditions functions as criminal punishment.

Imposing punitive sanctions on a non-party defending her home and records—without criminal procedural safeguards—plausibly states a due process violation.

Defendants argue the statute of limitations bars claims tied to August 2023 orders. That argument ignores:

• Continued enforcement
• Continuing sanctions

11

• Ongoing international database flags
• Ongoing investigative effects

Where void orders remain active and continue to generate legal consequences, each day of enforcement constitutes a fresh constitutional injury.

Moreover, jurisdictional defects may be raised at any time. Void orders do not gain validity through the passage of time.

This constructive denial of access mirrors the deprivation addressed in McGreal v. Westmoreland County, No. 20-0157 (W.D. Pa. Jan. 28, 2020), where the court permitted a § 1983 claim brought by grandparents who were excluded from meaningful participation in state adjudications affecting their rights. As in McGreal, Plaintiff here alleges that Defendants moved beyond neutral adjudication and actively prevented her from accessing the jurisdictional gateway while simultaneously subjecting her to coercive process. The Third Circuit has made clear that such exclusionary conduct may give rise to personal liability under § 1983 when officials participate in, direct, or knowingly acquiesce in constitutional violations. Ernst v. Children and Youth Services of Chester County, 108 F.3d 486 (3d Cir. 1997). By barring Plaintiff from meaningful participation while leveraging the court's machinery against her, Defendants plausibly deprived her of the fundamental due process protections guaranteed by the Fourteenth Amendment.

**D. Rooker-Feldman does not apply because Plaintiff is not seeking appellate review of a final state judgment and alleges independent injuries not caused by a state-court judgment.**

Rooker-Feldman is narrow and applies only where a plaintiff complains of injuries caused by a final state-court judgment and invites federal review and rejection of that judgment. Plaintiff's pleaded injuries are not simply "the custody order harmed me." Plaintiff alleges independent constitutional injuries inflicted on her as a non-party target—coercive discovery, law enforcement encounters, denial of a hearing on her own motion, reputational and liberty harms, and continuing collateral consequences.

12

Even if some requested relief could be construed as implicating state orders, that does not strip this Court of jurisdiction over Plaintiff's federal claims for damages and prospective relief based on independent injuries. Any concerns about remedy breadth can be addressed by tailoring relief, not by dismissing the entire case for lack of jurisdiction.

Rooker-Feldman presumes a valid state judgment. Here, the Superior Court ruled there was no case or controversy and that no order could have legal force. Plaintiff does not seek appellate reversal of a valid judgment; she seeks damages and prospective relief for independent constitutional injuries inflicted through investigative misuse of process and enforcement of void orders.

**E. The Anti-Injunction Act does not require dismissal, and § 1983 falls within the "expressly authorized" exception.**

Defendants argue the Anti-Injunction Act bars Plaintiff's injunctive requests. But § 1983 actions may qualify for the Act's "expressly authorized" exception, and Plaintiff alleges ongoing constitutional violations warranting prospective relief. At this stage, the Court should not dismiss on a categorical Anti-Injunction theory. If the Court later determines that specific injunction language is overbroad, the proper remedy is to narrow the injunction—not to dismiss the Complaint.

Section 1983 falls within the expressly authorized exception to the Anti-Injunction Act. Mitchum v. Foster, 407 U.S. 225 (1972). Where state actors enforce void orders in violation of federal rights, federal courts may grant prospective relief.

**F. Younger abstention does not require dismissal of this action, and at most would justify limited, tailored treatment of certain prospective relief.**

Defendants seek dismissal based on abstention principles. But Plaintiff alleges she is not a custody litigant and that the state process has been used as a mechanism to target her as a non-party, including denial of a meaningful opportunity to be heard. Younger does not compel dismissal of § 1983 damages claims, and abstention—if applicable at all—should be applied narrowly.

13

If the Court has concerns about interference with discrete ongoing state proceedings, the appropriate course is to allow Plaintiff's damages and constitutional claims to proceed and, if necessary, consider a limited stay or narrow tailoring with respect to particular forms of prospective relief—not wholesale dismissal with prejudice.

Younger abstention applies only to ongoing, valid proceedings. There is no ongoing adjudication here—only the maintenance of a docket declared devoid of legal force. Younger does not require abstention where proceedings are conducted in bad faith or for purposes of harassment, nor where there is no live state adjudication to protect.

## G. The statute of limitations does not warrant dismissal at the pleading stage because Plaintiff alleges post-limitations-period acts and continuing injury.

Defendants argue claims predating January 8, 2024 are time-barred, including all claims against Master Hurchalla. But Plaintiff alleges that the challenged conduct was not a single isolated event; rather, early orders were used as predicates for later coercive actions and continuing injuries, including denial of access to court and ongoing enforcement and collateral consequences. Plaintiff also alleges conduct within the limitations period (including 2024 and beyond) that independently supports liability and equitable relief. Limitations defenses are fact-dependent and should not be resolved on a motion to dismiss where Plaintiff plausibly pleads timely conduct and continuing harm.

## H. Declaratory relief is not categorically barred where Plaintiff alleges ongoing legal effects and continuing controversy.

Defendants assert Plaintiff cannot obtain declaratory relief regarding past conduct. Plaintiff, however, alleges an ongoing controversy—continued denial of access to a hearing and continuing collateral consequences flowing from the challenged actions. A declaration that clarifies the parties' rights and addresses ongoing effects is not a forbidden advisory opinion. If the Court believes the declaratory request should be narrowed, the remedy is narrowing—not dismissal.

Declaratory relief is appropriate where void orders remain active instruments generating present consequences. Plaintiff seeks forward-looking

14

relief to halt enforcement and expunge continuing restraints, not merely retrospective commentary.

## I. Dismissal with prejudice is improper; amendment is not futile.

Even if the Court accepts certain defenses as to certain defendants or forms of relief, dismissal with prejudice is unwarranted. Plaintiff can amend to clarify the precise prospective relief sought, refine the allegations regarding non-judicial/investigative conduct, identify the specific post-limitations acts, and conform the pleading to any jurisdictional or immunity rulings. Leave to amend should be granted.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendants' Motion to Dismiss be denied. In the alternative, Plaintiff requests leave to amend.

Respectfully submitted

Douglas P. Earl, Esquire
1015 Chestnut Street, Suite 902
Philadelphia, PA 19107
(215) 627-5970
dpearlattorney@aol.com
Attorney I.D. No. 54808
Attorney for Yasmine Akl

15

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

Yasmine A. Akl,                              :
            Plaintiff,               :
                                     :
       v.                         :       No. 2:26-cv-0101
                                     :
Delaware Court of Common Pleas, et Al.       :
            Defendants.              :

## CERTIFICATE OF SERVICE

The undersigned certifies that on February 26, 2026 he caused to be served

a copy of the foregoing Motion to Dismiss, brief in support, and proposed order

via electronic filing to all counsel of record.

Date: 2/26/26

Douglas P. Earl, Esquire
1015 Chestnut Street, Suite 902
Philadelphia, PA 19107
(215) 627-5970
dpearlattorney@aol.com
Attorney I.D. No. 54808
Attorney for Yasmine Akl

16